UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE FRANKLIN WELLS,** | **2:24-CV-13324-TGB-APP** |
| Petitioner, | HON. TERRENCE G. BERG |
| vs. | |
| **VERSAILLE CAPITAL ADVISORS, LLC, FUNDTEQ, and MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS,** | **ORDER GRANTING RESPONDENT MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| Respondents. | **(ECF NO. 13)** |

In July 2022, Petitioner George Franklin Wells, an investment adviser representative registered with Respondent Michigan Department of Licensing and Regulatory Affairs ("LARA") since March 2011, filed a JAMS arbitration naming Respondents Versaille Capital Advisors, LLC and FundTeq as respondents, and seeking the expungement of several customer complaints from his registration records. After the Arbitrator entered a final award granting the expungement of some customer complaint information, Wells filed the instant suit seeking confirmation of that award under Title 9 of the United States Code, § 9, the Federal Arbitration Act. ECF No. 1.

Now before the Court is Respondent LARA's Motion to Dismiss Wells's Petition for lack of subject matter jurisdiction. ECF No. 13. LARA

also argues that public policy favors denying confirmation of the arbitration award because LARA was not given notice and an opportunity to participate in the arbitration proceedings. *Id.* Wells filed a response in opposition to LARA's motion. ECF No. 15. The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons stated below, the Court will **GRANT** LARA's Motion to Dismiss and **DISMISS** this case for lack of subject matter jurisdiction because this case does not present a federal question under the Federal Arbitration Act, and the there is no diversity of citizenship or necessary amount in controversy.

## I.  BACKGROUND

Before addressing the factual and procedural background in this case, the Court will first provide a brief review of the regulatory framework from which this lawsuit arises.

### A. Regulatory Framework

The Financial Industry Regulatory Authority ("FINRA"), the successor to the National Association of Securities Dealers ("NASD"), is a private, not-for-profit corporation organized under the laws of Delaware. *Fiero v. Fin. Indus. Regul. Auth., Inc.*, 660 F.3d 569, 571 (2d Cir. 2011). It is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("the SEC"). *Id.* Under federal

securities law, as an SRO, FINRA plays a central role in the regulation of the securities industry. *Id.* As applicable to this case, FINRA is required to "establish and maintain a system for collecting and retaining registration information" for representatives of broker-dealers. *See* 15 U.S.C. §§ 78o–3(i)(1)(A) and (i)(5). In forms approved by the SEC, FINRA collects, among other items, "information about registered personnel, including customer complaints ...." *See* SEC Release No. 34–71959, 79 Fed. Reg. 22734 (Apr. 17, 2014); *see also Desiderio v. Nat'l Ass'n Sec. Dealers*, 191 F.3d 198, 201 (2d Cir. 1999) ("[T]he SEC ... must approve all [FINRA's] rules and regulations"). The complaints are recorded in an electronic database called the Central Registration Depository ("CRD"), which FINRA maintains in compliance with federal securities law and an agreement with the state securities regulators in all 50 states. The federal securities law requires that this complaint information, as well as other data, be available to the public. *See* 15 U.S.C. § 78o–3(i)(1)(B) ("A registered securities association shall ... establish and maintain a ... a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding ... registration information on its members and their associated persons."). FINRA fulfills this obligation with an on-line internet resource which it calls "BrokerCheck." *See* SEC Release No. 34-62476, 75 Fed. Reg. 41254, 41254 (Jul. 15, 2010).

FINRA has promulgated Rule 2080, which addresses the means by which information concerning a broker that exists in the CRD may be expunged. It states, in relevant part:

(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.

(b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below.

(1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral finding that:

(A) The claim allegation or information is factually impossible or clearly erroneous;

(B) The registered person was not involved in the alleged investment related sales practice violation, forgery, theft, misappropriation or conversion of funds; or

(C) The claim, allegation or information is false.

(2) If the expungement relief is based on judicial or arbitral findings other than those described above, FINRA, in its sole discretion and under

> extraordinary circumstances, also may waive the obligation to name FINRA as a party if it determines that:
>
> > (A) The expungement relief and accompanying findings on which it is base are meritorious; and
> >
> > (B) The expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements.

FINRA Rule 2080. FINRA Rule 13805, in turn, provides detailed arbitration procedures that "appl[y] to all requests to expunge customer dispute information from the CRD system."

## B. Factual and Procedural Background

Petitioner George Franklin Wells is a financial services representative registered with the SEC and with the Corporations, Securities, and Commercial Licensing Bureau of the Michigan Department of Licensing and Regulatory Affairs ("LARA"). ECF No. 1, PageID.6. LARA explains that the Corporations, Securities, and Commercial Licensing Bureau is vested with the authority and obligation to administer the Michigan Uniform Securities Act ("MUSA"), M.C.L. § 451.2101 *et seq.*, including regulation and licensing of securities and the individuals and entities who sell, or offer to sell, securities in the State of Michigan. ECF No. 9, PageID.80–81. Wells is the owner of Respondents Versaille Capital Advisors, LLC ("Versaille") and FundTeq, SEC-

registered investment advisor firms. ECF No. 11-1, PageID.132–33. Wells, Versaille, and FundTeq are not registered with FINRA, and thus FINRA did not have jurisdiction over Wells. *Id.*

Wells was the subject of customer disputes relating to the sale of securities, and he filed for a JAMS arbitration in August 2022 seeking expungement of four customer dispute disclosures from his registration records. ECF No. 1, PageID.3.[1] Following a final arbitration hearing in June 2023, the JAMS Arbitrator executed a partial award on August 4, 2023, recommending expungement of certain occurrences, denying expungement of another occurrence, and requesting additional information on three occurrences. *Id.* PageID.3–4. Over a year later, on August 12, 2024, the Arbitrator executed a final award recommending expungement of three customer dispute disclosures and denying expungement as to one customer dispute disclosure. *Id.* PageID.4.

On December 12, 2024, Wells filed a Petition to Confirm Arbitration in this case. ECF No. 1. Wells named his companies, Versaille and FundTeq, as Respondents in this action, although he seeks no relief as to them. He also named LARA as a Respondent. Wells seeks confirmation of the Final Award from the Arbitrator "[p]ursuant to FINRA Rule 2080" and "in accordance with 9 U.S.C. § 9, and an Order directing the

---

[1]    According to the JAMS website, "JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide." *See* https://www.jamsadr.com/history [https://perma.cc/Z3FZ-9TKG].

expungement of Occurrence Nos. 2008872, 2121373, and 2121371 from FINRA's CRD system." *Id.* PageID.4. Wells attached to his Petition a Memorandum of Law in Support of Petition to Confirm Arbitration Award, *id.* PageID.6–12, as well as copies of the Arbitrator's Partial Award and Final Award as exhibits. *Id.* PageID.14–43, 45–52.

On February 21, 2025, Respondent Lara filed an Answer and Objection to Petition to Confirm Arbitration Award, ECF No. 9, and a supplemental brief in support of its Answer. ECF No. 10. LARA contends that this Court lacks subject matter jurisdiction to hear this matter, and that, even if it did have jurisdiction, the arbitration award should not be confirmed as a matter of public policy because LARA was not a party to the underlying arbitration, even though expungement would necessitate destruction of state records. Wells then filed a reply to LARA's objection, disputing LARA's arguments. ECF No. 11.

Then, on May 12, 2025, LARA filed the instant Motion to Dismiss the Petition. ECF No. 13. LARA again argues that this Court lacks subject matter jurisdiction over Wells's Petition. LARA further argues that, assuming subject matter jurisdiction did exist, Wells fails to state a valid claim because the award requires the destruction of state records and LARA was not made a party to the underlying arbitration proceedings, which violates public policy.

Wells filed a response in opposition to LARA's motion. ECF No. 15. Wells contends that this Court does have subject matter jurisdiction over

7

this matter because he seeks expungement pursuant to FINRA Rule 2080, and FINRA's rules, including Rule 2080, are reviewed and approved by the SEC, and thus enforcement of that rule raises significant questions of federal law. Wells also argues that confirmation of the arbitration award would not violate public policy.

LARA did not file a reply brief.

## II.   LEGAL STANDARD

Although LARA moves for relief "pursuant to Federal Rule of Civil Procedure 12(c)," the motion is properly considered under Fed. R. Civ. P. 12(b)(1). A "Rule 12(c) motion is a decision on the merits that cannot be decided without first determining whether subject matter jurisdiction is proper...." *Ogle v. Church of God*, 153 F. App'x 371, 375 (6th Cir. 2005). Thus, "if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. Aug. 2019 update) (citations omitted); *see also Hermiz v. Miller*, No. 22-12707, 2023 WL 6163480, at *1 (E.D. Mich. Sept. 21, 2023) (Parker, J.) (while defendants moved to dismiss under Rule 12(c), "one of their arguments is that federal subject matter jurisdiction is lacking … and, to that extent, their motion is also brought pursuant to Federal Rule of Civil Procedure 12(b)(1).").

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss ... generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). LARA assert the former. A facial attack challenges the sufficiency of the pleading itself. In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

## III.   DISCUSSION

In his Petition, Wells cites 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA") as conferring subject matter jurisdiction on this Court. *See* ECF No. 1 ¶ 5, PageID.3 ("This Court has subject matter jurisdiction in accordance with 9 U.S.C. § 9."). LARA asserts in its motion to dismiss that § 9 of the FAA does not confer subject matter jurisdiction upon a federal court, and that Wells's Petition therefore must be dismissed for lack of subject matter jurisdiction. ECF No. 13, PageID.183–86.

## A. Federal Arbitration Act, 9 U.S.C. § 9

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Courts have federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[R]eview of whether federal-question jurisdiction exists is governed by the well-pleaded complaint rule, which provides that jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint." *Kitzmann v. Local 619-M Graphic Commc'ns Conf. of the Int'l Bhd. of Teamsters*, 415 F. App'x 714, 716 (6th Cir. 2011) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Wells cites to the FAA, specifically 9 U.S.C. § 9, in his Petition as the basis for federal subject matter jurisdiction in this case. ECF No. 1 ¶ 5, PageID.3. Pursuant to 9 U.S.C. § 9, within one year after the issuance of an arbitration award, any party to the arbitration may apply to the court for an award confirming the arbitration award, and the court "must" grant the award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Wells asserts that no such motion to vacate, modify, or correct has been served, and the time for doing so has passed.

10

"While the [FAA] creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976) or otherwise." *Southland Corp. v. Keating*, 465 U.S. 1, 15 n.9 (1984) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n. 32 (1983)). The Supreme Court, the Sixth Circuit, and courts in this District and elsewhere therefore have universally held that 9 U.S.C. § 9 does not confer subject matter jurisdiction upon a federal court absent some other independent basis for jurisdiction. *Southland Corp.*, 465 U.S. at 15, n. 9; *Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 257–58 (6th Cir. 1994) ("It is equally clear that § 9 of the [FAA] does not create subject matter jurisdiction."); *American Bankers Ins. Co. of Florida v. Nat'l Cas. Co.*, No. 2:08-cv-13522, 2009 WL 257699, at *1 (E.D. Mich. Feb. 3, 2009) (Edmunds, J.) ("Section 9, however, does not provide an independent basis for subject matter jurisdiction and, absent another source of jurisdiction, the parties must establish diversity under 28 U.S.C.A. § 1332(a)."); *see also Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024) (recognizing that "[t]he provisions of 9 U.S.C. § 9" do not in and of themselves confer subject matter jurisdiction on a federal court) (citation modified); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1470 (11th Cir. 1997) (collecting cases holding that section 9 is not a statutory grant of federal subject matter jurisdiction).

11

As the Supreme Court explained when addressing the jurisdiction of federal courts to hear claims under the FAA:

> The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise. Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.

*Mercury Constr. Corp.*, 460 U.S. at 26 (citing *Commercial Metals Co. v. Balfour, Guthrie & Co.*, 577 F.2d 264, 268–69 (5th Cir. 1978)).

Accordingly, this Court does not have subject matter jurisdiction in this case under 9 U.S.C. § 9 alone.

### B. FINRA Rule 2080

Because the FAA alone does not confer jurisdiction in this Court, Wells must plead an independent source on which to base federal jurisdiction other than Section 9 of the FAA. In other words "there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Mercury Constr. Corp.*, 460 U.S. at 25 n.32.[2]

---

[2] LARA argues that there is no diversity jurisdiction here, as Wells pleads that he is a citizen of Michigan and that Respondents Versaille and FundTeq are business entities organized and located in Michigan.

12

Wells argues the FINRA Rule 2080 supplies that independent source of federal jurisdiction. He asserts that FINRA is an SRO that operates pursuant to authority delegated by the SEC, and that FINRA's rules, including Rule 2080, are reviewed and approved by the SEC after a lengthy proposal and public comment period. ECF No. 15, PageID.226. He continues that "[w]hile FINRA Rule 2080 itself may not be a federal law, the promulgation and enforcement of that rule (and FINRA's other rules) 'unavoidably' raise significant questions of federal law because 'those Rules are promulgated according to the [Security and] Exchange Act's mandates.'" *Id.* PageID.227 (citing *Turbeville v. FINRA*, 874 F.3d 1268 (11th Cir. 2017)).

In *Turbeville*, the plaintiff, a former registered representative of a FINRA-affiliated broker firm, brought suit against FINRA after he was disciplined by FINRA, alleging that FINRA's investigation of him exceeded its authority and jurisdiction under its own internal rules and regulatory authority. *Turbeville*, 874 F.3d at 1273. The Eleventh Circuit

---

ECF No. 1 ¶¶ 1–3, PageID.2–3. LARA states that it is not a "citizen" for purposes of diversity under 28 U.S.C. § 1332. ECF No. 13, PageID.187 (citing *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) (because of the immunity that the 11th amendment provides to States and State officials, "a State is not a 'citizen' for purposes of diversity jurisdiction")). LARA further contends that there is no amount in controversy in this case as Wells simply seeks to confirm an arbitration award expunging certain information from public records. *Id.* Wells does not address these arguments. The Court agrees that there is no diversity jurisdiction in this case.

affirmed the district court's denial of a motion to remand, stating that the plaintiff's complaint was "fundamentally a challenge to [FINRA's] compliance with its internal rules while carrying out its regulatory and enforcement actions." *Id.* at 1275. The court noted that FINRA issued the disciplinary notice "pursuant to its regulatory directive under the Exchange Act" and under its SEC-approved rules. *Id.* The court nevertheless found that the case should be dismissed because no private right of action exists for FINRA members to sue FINRA for violating its own internal rules. *Id.* at 1276–77. Wells cites to *Turbeville* because the Eleventh Circuit reasoned that because FINRA's internal procedures "are promulgated according to the Exchange Act's mandates, interpretation unavoidably involves answering federal questions." *Id.*

However, aside from the fact that *Turbeville* was decided by the Eleventh Circuit and therefore is not controlling, it is also distinguishable from the case at bar. In *Turbeville*, the defendant FINRA was itself a creature of the Exchange Act, statutorily tasked with enforcing the Act and the plaintiff alleged that FINRA violated its own rules while carrying out its regulatory and enforcement functions. *Id.* at 1277. Accordingly, any claims against FINRA's conduct "in carrying out its disciplinary and disclosure functions under SEC-approved rules .... must have been supplied by federal law." *Id.* at 1275. But the instant case has been brought to confirm an arbitration award issued by a non-FINRA arbitration association, JAMS. No claims are being made against FINRA,

14

nor is it alleged that FINRA violated any statutory or regulatory authority under the Securities and Exchange Act. In fact, it is undisputed that FINRA did not have any jurisdiction over Wells, or the customer complaints disclosed on his registration application. *See* ECF No. 11, PageID.162 (email from FINRA's Associate General Counsel stating "FINRA has no regulatory authority over the [Investment-Advisor]-only information" and thus "FINRA does not need to be named" in the expungement request); ECF No. 1-1, PageID.14 ("The Claimant has presented this request [for expungement] outside of FINRA, as the matter is beyond that institution's jurisdiction due to neither the Claimant nor the Respondent being registered with the same."). Moreover, Wells does not allege any violation of FINRA Rules. Rather, he simply seeks a court order confirming a private arbitration pursuant to FINRA Rule 2080, and directing the expungement of certain records from the CRD.

Further, Wells's argument that because FINRA was created by Congress, all FINRA proceedings involving FINRA rules necessarily rely on federal law fails. While it is true that FINRA is a "quasi-governmental agency responsible for overseeing the securities brokerage industry," *ACAP Fin., Inc. v. U.S. Sec. & Exch. Comm'n*, 783 F.3d 763, 765 (10th Cir. 2015), the SEC's oversight and approval of FINRA rules does not constitute state action. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (a government agency's "[m]ere approval" of private action is "not

15

sufficient" to convert it into state action); *Lucido v. Mueler*, No. 08-15269, 2009 WL 3190368, at *4 (E.D. Mich. Sept. 29, 2009) (Cox, J.) (stating that FINRA is not a state actor and collecting supporting cases), *aff'd sub nom. Lucido v. F.B.I.*, 427 F. App'x 497 (6th Cir. 2011). Thus, "[a] breach of FINRA rules 'is simply a breach of a private association's rules, although that association is one which is closely related to the SEC ... and therefore does not present a question which arises under the laws of the United States.'" *Janus Distrib. LLC v. Roberts*, No. 16-cv-2130-WJM-MJW, 2017 WL 1788374, at *4 (D. Colo. May 5, 2017) (quoting *Apollo Prop. Partners, LLC v. Newedge Fin., Inc.*, No. H-08-1803, 2009 WL 778108, at *2 (S.D. Tex. Mar. 20, 2009)). As the Sixth Circuit has stated, "[a] breach of the NASD [FINRA's predecessor] rules does not present a question that arises under the laws of the United States within the meaning of 28 U.S.C. § 1331, *and it follows a fortiori that compliance with NASD [FINRA] rules does not give rise to federal question jurisdiction.*" *Ford*, 29 F.3d at 259 (emphasis added) (citations omitted). *See also Intervest Int'l Equities Corp. v. Aberlich*, No. 12-CV-13750, 2013 WL 1316997, at *4 (E.D. Mich. Mar. 29, 2013) (Hood, J.) ("The contention that [FINRA] rules were violated absent more does not confer federal question jurisdiction."). Therefore, "although FINRA rules require SEC approval, the rules do not come within the meaning of 15 U.S.C. § 78a *et seq.*, which gives a federal court exclusive jurisdiction over violations of rules and regulations promulgated under the SEA." *Janus Distribs.*, 2017 WL 1788374, at *4

16

(granting motion to dismiss for lack of subject matter jurisdiction); *see also Raymond James & Assoc., Inc. v. Nat'l Ass'n of Sec. Dealers*, 844 F. Supp. 1504, 1507 (M.D. Fla. 1994) ("[T]he NASD [FINRA's predecessor] rules themselves do not give rise to federal question jurisdiction.").

In addition, Wells's claim that this Court has subject matter jurisdiction because he seeks expungement of records that FINRA publishes in FINRA-maintained databases (i.e., CRD and BrokerCheck) under FINRA rules reviewed and approved by the SEC fails. The question of whether an action for expungement of information in a CRD profile pursuant to Rule 2080 seeks to enforce a duty created by the Securities and Exchange Act or the rules thereunder has been squarely addressed by several federal district courts, which have refused to find federal question jurisdiction. *See, e.g., Flowers v. Fin. Indus. Regul. Auth., Inc.*, No. 15CV2390 DMS (JMA), 2015 WL 9487450, at *2 (S.D. Cal. Dec. 24, 2015) (finding no substantial issues of federal law under FINRA Rule 2080 where plaintiff sought expungement of regulatory information from the CRD because no duty was implicated that would lead to exclusive jurisdiction); *Doe v. Fin. Indus. Regul. Auth., Inc.*, No CV 13-06436 DDP ASX, 2013 WL 6092790, at *1 (C.D. Cal. Nov. 19, 2013) (finding no duty to expunge customer-dispute information from the CRD that would trigger exclusive federal jurisdiction and where plaintiff did not claim that FINRA failed to fulfill any particular duty or that FINRA's rules are facially invalid); *Spalding v. Fin. Indus. Regul. Auth., Inc.*, No.

17

1:12-CV-1181-RWS, 2013 WL 1129396, at *4–5 (N.D. Ga. Mar. 19, 2013) (finding no exclusive jurisdiction in suit seeking expungement of customer-dispute information because nothing in the action would require interpretation of Rule 2080, and the existence of a comprehensive federal regulatory scheme was insufficient on its own to establish federal jurisdiction); *In re Lickiss*, No. C-11-1986 EMC, 2011 WL 2471022, at *3–4 (N.D. Cal. June 22, 2011) (explaining that FINRA Rule 2080 "sets forth procedures, not a substantive duty," because no "duty to expunge" has been created by the 1934 Act or the rules thereunder).

Those courts relied on the language of 15 U.S.C. § 78aa, which gives federal courts exclusive jurisdiction over only those claims involving a "liability or duty" created by the Exchange Act, and have stated that the Act establishes a duty for FINRA to "collect" and "retain" registration information, but that there is no "duty to expunge" created by the Act. *See, e.g., Lickiss*, 2011 WL 2471022, at *3 ("There is nothing in the Act, rules, or regulations that provide substantive criteria as to when expungement is appropriate."). Those courts further held that Rule 2080 is only a procedural rule setting out how registered individuals can seek expungement; it does not provide any substantive standard for determining whether expungement is appropriate or required. Thus, in seeking relief related to expungement of certain information from the CRD, the plaintiff is not seeking to enforce any duty of FINRA under Rule 2080. *Lickiss*, 2011 WL 2471022, at *4; *Spalding*, 2013 WL 1129396, at

18

*5 (concluding that "[t]he fact that the 1934 Act establishes a comprehensive securities regulation regime in which FINRA participates is not sufficient to meet [the] burden of establishing federal question jurisdiction.").

Here, as in the cases cited above, Rule 2080 is mentioned in the Petition simply to provide context for the relief sought, but not as the basis for any substantive duty. Further, Rule 2080 itself refers to "a court of competent jurisdiction," and not to a "federal court," thereby conveying FINRA's understanding that federal courts do not have exclusive jurisdiction over lawsuits such as the one brought by Wells here. *See Lickiss*, 2011 WL 2471022, at *4 (stating that Rule 2080 seems to contemplate an action in state court due to the phrase "court of competent jurisdiction"). Because this Court lacks subject matter jurisdiction to hear this case, it will not address LARA's public policy arguments.

## IV. CONCLUSION

For the reasons stated above, Respondent Michigan Department of Licensing and Regulatory Affairs' Motion to Dismiss, ECF No. 13, is **GRANTED**, and the Petition is **DISMISSED**.

Plaintiff is directed to M.C.L. § 600.5856 regarding the tolling of the statute of limitations. *See St. Clair v. XPO Logistics, Inc.*, 6 N.W.3d 408, 409 (Mich. 2024) ("Under MCL 600.5856, the applicable limitations period was tolled at the time plaintiff's original complaint was filed in federal court.") (citing *Badon v. Gen. Motors Corp.*, 470 N.W.2d 436, 439

(Mich. Ct. App. 1991) (stating that the filing of a federal action tolls the statutory limitations period until the federal action is no longer pending)).

This is a final action that closes the case.

**IT IS SO ORDERED.**

Dated: March 9, 2026 /s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE